UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X ECF CASE

OSCAR TEJEDA,

Plaintiff,

**COMPLAINT AND JURY DEMAND**

v.

HOME DEPOT INC., HOME DEPOT U.S.A. INC. & KEVIN WOODS *individually*,

Defendants.
-----------------------------------------------------------------**X**

The Plaintiff by his attorneys, Law Offices of Lauren Goldberg, PLLC, as and for his complaint against the Defendants allege:

**NATURE OF CLAIMS**

1. Plaintiff brings this action against Defendants Home Depot Inc., Home Depot U.S.A. Inc., and Kevin Woods, alleging claims for discrimination based on his being Hispanic and retaliation in violation of 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Lave § 290 et seq. and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin Code § 8-101 *et seq.*

**JURISDICTION AND VENUE**

2. This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under 42 U.S.C § 1981. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) as this action arose, in substantial part, within the Southern District of New York, where the unlawful practices alleged herein occurred.

## PARTIES

4. Plaintiff Oscar Tejeda ("Plaintiff" or "Mr. Tejeda" ) is a Hispanic male resident of the State of New York who was employed by Defendants as a part-time associate beginning in February 2025.

5. At all times relevant herein, Plaintiff was an "employee" within the meaning of the NYSHRL and the NYCHRL and was acting within the scope of his employment with the Defendants.

6. Defendant Home Depot Inc is a corporation organized under the laws of the State of Delaware with a principal executive office at 2455 Paces Ferry Road, Atlanta Georgia 30339 and was Plaintiff's "employer" within the meaning of the NYSHRL and the NYCHRL.

7. Defendant Home Depot U.S.A. is a corporation organized under the laws of the State of Delaware with a principal executive office at 2455 Paces Ferry Road, Atlanta Georgia 30339 and was Plaintiff's "employer" within the meaning of the NYSHRL and the NYCHRL.

8. Defendant Home Depot U.S.A. Inc is registered to do business in New York State and is a subsidiary of Defendant Home Depot Inc.

9. Upon information and belief, Defendants Home Depot Inc. and Home Depot USA Inc. (together, "Home Depot") operate as a single unified enterprise. At all relevant times,

both entities employed Plaintiff and were responsible for the terms and conditions of his employment.

10. Upon information and belief, Home Depot Inc. exercises operational control over Home Depot U.S.A. Inc. including all human resources' policies and personnel decisions.

11. At all relevant times, Home Depot Inc. was the effective alter ego of Home Depot U.S.A. Inc.

12. Home Depot owns and operates about 101 retail stores in New York including the Home Depot store located at 2560 Bruckner Blvd in Bronx, New York which is where Plaintiff worked during his entire employment with Defendants.

13. Defendant Kevin Woods is a Black male who was, at all relevant times hereto, employed by Home Depot and was Plaintiff's supervisor throughout Plaintiff's employment and had the power to affect the terms and conditions of Mr. Tejeda's employment.

14. Home Depot has more than 1000 employees in the United States.

15. Defendant Home Depot Inc., Home Depot U.S.A. Inc., and Kevin Woods are collectively referred to as "Defendants."

## STATEMENT OF FACTS

16. As stated above, Plaintiff was hired on or about February 20, 2025, as a part-time associate at the Home Depot store located at 2560 Bruckner Blvd in Bronx, New York ("the Store").

17. At the time of his hire, two Black males, Derrick Jones and Sam Cole, were also hired for the same role as Plaintiff (part-time associate) at the Store.

18. Mr. Tejeda and these two Black associates all reported to the same two supervisors, had the same responsibilities and were subject to the same workplace rules and policies.

19. From the onset of his employment, Mr. Tejeda was treated worse than similarly situated non-Hispanic employees, including the two Black associates who began working alongside him, due to his being Hispanic.
20. Plaintiff also suffered hostility due to his being Hispanic.
21. During only Mr. Tejeda's second week of work, Defendant Woods made troubling and inappropriate remarks to him including explicitly telling him not to associate with the other Hispanic associates because he "did not like Hispanics."
22. Defendant Woods added that Mr. Tejeda's opportunities for pay increases and incentives depended on whether he distanced himself from the other Hispanic employees at the Store since he [Kevin Woods] had a lot of influence with the "high ups" at the company.
23. Defendant Woods openly made derogatory and xenophobic comments about other Hispanic individuals and employees.
24. On one occasion, when asked why there were often people of Mexican descent outside the Store, Mr. Woods replied, "all that the Mexicans do is come in the store, steal and use the bathroom" adding he would "keep calling ICE to get all the Mexicans out of the country."
25. As a new employee, despite being extremely horrified by these comments, Mr. Tejeda was reluctant to report these discriminatory statements immediately for fear of retaliation.
26. Unfortunately, as Mr. Tejeda soon learned, Defendant Woods' discriminatory behavior extended beyond just comments and affected Plaintiff's employment in other material ways.
27. For example, although he and the other two new Black associates were told they would only be eligible for full-time status after completing a 90-day probationary period, the

new Black associates were granted full-time positions before the end of the 90 day probationary period while Mr. Tejeda's request to be a full-time employee was ignored.

28. Full-time employees, unlike part-time employees, received employment benefits such as health insurance coverage, stock options and the ability to contribute to a 401K retirement plan.

29. Additionally, while the two new Black associates were issued multiple uniforms (including shirts, hoodies, and a sweatshirt each), Mr. Tejeda received only one shirt.

30. Mr. Tejeda complained about the disparate treatment to management but to no avail as Defendant Woods refused to issue him additional uniforms.

31. Meanwhile Defendant Woods criticized Mr. Tejeda for failing to keep his one shirt sufficiently clean.

32. Additionally, the two new Black associates were provided training and advancement opportunities denied to Plaintiff, including the ability to obtain a certification to operate the reach truck and other heavy machinery in the Store.

33. On multiple occasions Mr. Tejeda requested the foregoing training but was never allowed to participate.

34. Whenever the trainer came to the store, Plaintiff was not allowed to participate while the new Black employees were permitted to receive the training and the certification.

35. Defendant Woods also would not give Mr. Tejeda any extra hours of work while he would give the two new Black associates additional work hours.

36. After encountering continuous discriminatory treatment, in March 2025, Mr. Tejeda called the Defendants' anonymous ethics hotline to raise his concerns about Mr. Woods' discrimination and harassment.

37. After recognizing that his complaints to the ethics hotline did not prompt any action, Mr. Tejeda then raised his concerns with the Defendants' District Manager, Frank Campos.
38. During a phone call with Mr. Campos on or about April 3, 2025, Mr. Tejeda reported the harassing comments and discriminatory treatment by Defendant Woods.
39. This included reporting Defendant Woods's comment that he "did not like Hispanics" and that Mr. Tejeda's opportunities for pay increases and incentives depended on whether he distanced himself from the other Hispanic employees at the Store since he [Kevin Woods] had a lot of influence with the "high ups" at the company.
40. On April 4, 2025, Mr. Tejeda had a follow-up meeting with Mr. Campos over Zoom. "Ibrahim," the Assistant District Manager, was also present during this meeting.
41. During this Zoom meeting, Mr. Tejeda again recounted the troubling racist comments by Defendant Woods.
42. During this meeting, Mr. Tejeda also explained how Defendant Woods treated the two Black associates significantly better than he treated Plaintiff, including in terms of training, hours, uniforms, and tone.
43. Mr. Campos and Ibrahim told Mr. Tejeda that the matter would be investigated.
44. No one ever contacted Plaintiff again to discuss any investigation, nor did anyone follow up with Plaintiff regarding his complaints.
45. After Mr. Tejeda raised his concerns with Mr. Campos, Mr. Woods retaliated against Plaintiff by ostracizing him, humiliating him, and threatening his job.

46. Defendant Woods told other employees in the store that Mr. Tejeda had reported him for discrimination and he instructed those employees to tell him if they saw Mr. Tejeda doing "anything wrong."

47. Mr. Woods also retaliated against Mr. Tejeda by giving him difficult labor-intensive assignments on his own, when those assignments were not typically given out on a regular basis nor were they performed by only one associate.

48. Defendant Woods constantly assigned Plaintiff to the lumber section where he had to work alone for hours continuously moving and straightening out the lumber.

49. Although Defendants typically have associates rotate tasks so they work in various areas around the store, Mr. Tejeda was now relegated to mostly the lumber section or sometimes the steel section where he also was forced to move around heavy equipment/supplies for hours by himself.

50. Another supervisor even commented to Mr. Tejeda that it was "odd" that he was continuously being required to move around the heavy lumber as that was not a "typical" assignment for associates.

51. Defendant Woods also threatened to fire Plaintiff on various occasions without valid grounds.

52. For example, on one occasion while Mr. Tejeda was wearing one of his own sweatshirts because it was cold outside, Defendant Woods threatened to discharge him for failing to wear a Home Depot sweatshirt.

53. This despite the fact that Defendant Woods had refused to provide Plaintiff with a company sweatshirt.

54. In stark contrast, the other Black associates were able to wear their own sweatshirts without incident even though they had company sweatshirts.

55. On May 14, 2025, Mr. Tejeda texted Mr. Campos that Defendant Woods had been retaliating against him since he made his complaint.

56. On May 15, 2025, Mr. Tejeda urgently called Mr. Campos as tensions were continuing to escalate in the face of Defendant Woods' intensifying harassment.

57. Mr. Campos claimed that the investigation into Plaintiff's complaints was "ongoing."

58. During this conversation, Mr. Tejeda requested that management intervene by prohibiting Defendant Woods from interacting with him as the harassment was causing him "significant stress" and was affecting his "mental well-being."

59. Mr. Campos denied his request and forced Mr. Tejeda to continue reporting directly to Mr. Woods.

60. On May 21, 2025, Mr. Woods ridiculed Mr. Tejeda purposefully in front of Mr. Tejeda's black associate colleagues. Mr. Woods was mocking Mr. Tejeda, calling him "dumb" and "stupid" encouraging the other associates to laugh at Mr. Tejeda.

61. In response, Mr. Tejeda objected to Defendant Woods' harassing and retaliatory behavior and how he was being treated.

62. After this incident, Mr. Tejeda texted Mr. Campos again asking for an update into the investigation and for the contact information for human resources so that he could speak with them directly.

63. Mr. Tejeda told Mr. Campos that Mr. Woods was continuing to harass him.

64. Mr. Campos never responded to Plaintiff's texts and never provided the contact information to human resources as Plaintiff had requested.

65. At no point during his employment was Mr. Tejeda ever contacted by any member of Defendants' HR Department, nor anyone else, in connection with his complaints.
66. On May 22, 2025, one of the Black employees who worked closely with Defendant Woods threatened Plaintiff with physical harm by telling him he was "going to be taken care of" and "handled" because he kept reporting Defendant Woods to management.
67. Fearing for his safety, Mr. Tejeda texted Mr. Campos and informed him of the threats and identified the employee involved and provided witnesses' names.
68. Mr. Campos spoke with Mr. Tejeda after this incident occurred and told him that he had sent the employee who had threatened him home for the day.
69. Mr. Campos also said that if Mr. Tejeda felt unsafe, he could go home and would receive compensation for the day.
70. Mr. Campos told Mr. Tejeda that he had opened a case with Human Resources as this retaliation was "clearly done on behalf of Defendant Woods."
71. Within five days of this serious incident, on May 27, 2025, Mr. Campos terminated Plaintiff's employment.
72. Mr. Tejeda was terminated for complaining about Defendant Woods' racially discriminatory comments and harassing behavior.
73. Upon information and belief, Defendants Woods is still a supervisor at Home Depot and has not faced any consequences for his behavior.
74. Mr. Tejeda's dismissal was in retaliation for Plaintiff's protected activity, including his complaints about the abuse and hostility that Mr. Tejeda suffered on account of his race.
75. Plaintiff was qualified for his position and performed his work well and never received any write-ups during his employment.

76. Defendants had knowledge of the race discrimination and harassment and did nothing to prevent it or remedy it in the face of Plaintiff's ongoing complaints.

77. But for the fact that Plaintiff Tejeda complained about the discriminatory comments and behavior from Defendants Woods, which Plaintiff reasonably believed to be unlawful racially harassing comments and behaviors, Defendants would not have fired him.

78. Defendants had knowledge of and/acquiesced in the discrimination and racial harassment as Plaintiff Tejeda complained on numerous occasions to Defendants, who rather than taking any action in response, instead turned around and terminated Plaintiff Tejeda's employment.

79. Defendants' actions and conduct were intentional and intended to damage Plaintiff Tejeda.

80. Plaintiff Tejeda has been unlawfully discriminated against, retaliated against, humiliated, degraded, belittled, and, as a result, suffered (and continues to suffer) emotional distress, loss of income and earnings.

81. As a result of Defendants' discriminatory conduct, Plaintiff Tejeda has suffered emotional distress that has caused him to seek counseling.

82. Defendants' conduct was malicious, willful, and outrageous. As such Plaintiff demands punitive damages against all Defendants, jointly and severally.

83. Plaintiff has been unable to secure new employment since his termination and therefore continues to accrue economic damages, back pay and front pay.

## <u>FRIST CLAIM FOR RELIEF</u>

**Race Discrimination in Violation of 42 U.S.C. § 1981**

**(Against All Defendants)**

84. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

85. In violation of the 42 U.S.C. § 1981, Defendants intentionally discriminated against Plaintiff on the basis of his Hispanic race.

86. Defendants' discriminatory conduct interfered with Plaintiff's right to make and enforce contracts.

87. But for Plaintiff's race, Defendants would not have discriminated against him.

88. Defendants subjected to Mr. Tejeda to differential terms and conditions of employment because of his race.

89. The discriminatory acts of Defendants included but were not limited to denying him the same opportunities and benefits as other non-Hispanic employees, having his complaints of race discrimination ignored and being terminated for complaining about the race discrimination that he was experiencing.

90. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

91. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

92. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

93. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress,

punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## SECOND CLAIM FOR RELIEF

**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

94. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

95. In violation of 42 U.S.C. § 1981, Defendants intentionally retaliated and discriminated against Plaintiff for engaging in the protected activity of opposing and reporting incidents of discrimination based on his Hispanic race.

96. Defendants' retaliatory conduct interfered with Plaintiff's right to make and enforce contracts.

97. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

98. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

99. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

100. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and benefits, damages for emotional

distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## THIRD CLAIM FOR RELIEF

**Race Discrimination in Violation of The New York State Human Rights Law**
**N.Y. Exec. Law § 296 et seq.**
**(Against Defendants Home Depot Inc. and Home Depot U.S.A. Inc.)**

101. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

102. In violation of the NYSHRL, Defendants discriminated against Plaintiff on the basis of his Hispanic race.

103. The discriminatory acts of Defendants included, but were not limited to, denying him the same opportunities and benefits as other non-Hispanic employees, having his complaints of race discrimination ignored and being terminated for complaining about the race discrimination that he was experiencing.

104. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

105. As a result of Defendant' unlawful conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

106. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

107. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## FOURTH CLAIM FOR RELIEF

**Retaliation in Violation of the New York State Human Rights Law**
**N.Y. Exec. Law § 296 et seq.**
**(Against Defendants Home Dept Inc. & Home Depot U.S.A. Inc.)**

108. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

109. In violation of the NYSHRL, Defendants retaliated and discriminated against Plaintiff for engaging in the protected activity of opposing and reporting incidents of discrimination based on his Hispanic race.

110. As a result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

111. As a result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

112. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

113. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages; damages for emotional distress,

punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

**FIFTH CLAIM FOR RELIEF**

**Race Discrimination in Violation of The New York City Human Rights Law**
**N.Y.C Admin Code § 8-107**
**(Against All Defendants)**

114. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

115. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of his Hispanic race.

116. The discriminatory acts of Defendants included, but were not limited to denying him the same opportunities and benefits as other non-Hispanic employees, having his complaints of race discrimination ignored and being terminated for complaining about the race discrimination that he was experiencing.

117. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

118. As a result of Defendant' unlawful conduct, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including but not limited to emotional distress.

119. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

120. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## SIXTH CLAIM FOR RELIEF

**Hostile Work Environment in Violation of The New York City Human Rights Law**
**N.Y.C Admin Code § 8-107**
**(Against All Defendants)**

121. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

122. In violation of the NYCHRL, Defendants discriminated against Plaintiff by creating a hostile work environment based on his race.

123. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

124. As a result of Defendant' unlawful conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

125. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

126. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress,

punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## SEVENTH CLAIM FOR RELIEF

**Retaliation in Violation of the New York City Human Rights Law**
**N.Y.C. Admin Code § 8-107**
**(Against All Defendants)**

127. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

128. In violation of the NYCHRL, Defendants retaliated and discriminated against Plaintiff for engaging in the protected activity of opposing and reporting incidents of discrimination based on his Hispanic race.

129. As a result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer, substantial monetary damages, including but not limited to, loss of income and benefits, including past and future salary.

130. As a result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including but not limited to emotional distress.

131. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

132. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages; damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## EIGHTH CLAIM FOR RELIEF

**Aiding and Abetting Discrimination in Violation of the New York State Human Rights Law**
**N.Y. Exec Law 296**
**(Against Defendant Kevin Woods)**

133. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

134. The NYSHRL prohibits conduct that aids and abets unlawful discrimination and/or retaliation.

135. In violation of the NYSHRL, Defendant Kevin Woods aided and abetted the discriminatory and retaliatory conduct.

136. As a result of Defendant Woods's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and benefits, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## NINTH CLAIM FOR RELIEF

**Aiding and Abetting Retaliation in Violation of the New York State Human Rights Law**
**N.Y. Exec Law § 296**
**(Against Defendant Kevin Woods)**

137. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

138. The NYSHRL prohibits conduct that aids and abets unlawful discrimination and/or retaliation.

139. In violation of the NYSHRL, Defendant Kevin Woods aided and abetted the discriminatory and retaliatory conduct.

140. As a result of Defendant Woods's unlawful retaliatory conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and benefits, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## TENTH CLAIM FOR RELIEF

**Aiding and Abetting Discrimination in Violation of the New York City Human Rights Law**
**N.Y.C. Admin Code § 8-107**
**(Against Defendant Kevin Woods)**

141. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

142. The NYCHRL prohibits conduct that aids and abets unlawful discrimination and/or retaliation.

143. In violation of the NYCHRL, Defendant Kevin Woods aided and abetted the discriminatory and retaliatory conduct.

144. As a result of Defendant Woods's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and benefits, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## ELEVENTH CLAIM FOR RELIEF

**Aiding and Abetting Retaliation in Violation of the New York City Human Rights Law**
**N.Y.C. Admin Code § 8-107**
**(Against Defendant Kevin Woods)**

145. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

146. The NYCHRL prohibits conduct that aids and abets unlawful discrimination and/or retaliation.

147. In violation of the NYCHRL, Defendant Kevin Woods aided and abetted the discriminatory and retaliatory conduct.

148. As a result of Defendant Woods's unlawful retaliatory conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and benefits, damages for emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Oscar Tejeda respectfully requests that this Court enter a judgment in his favor and against Defendants, awarding the following relief:

(a) An award of damages in an amount to be determined at trial to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and benefits;

(b) An award of damages in an amount to be determined at trial to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for severe mental anguish, anxiety, stress, humiliation, embarrassment, and emotional distress;

(c) An award of any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial;

(d) An award of punitive damages;

(e) An award of all costs that plaintiff has incurred in this action, including reasonable attorneys' fees;

(f) interest from the time of the initial loss until satisfaction of judgment as well as with post judgment interest thereon;

(g) Such other relief as this Court may deem just and proper.

Dated: New York, New York
October 3, 2025

**LAW OFFICES OF LAUREN GOLDBERG, PLLC**

By:____________________________

LAUREN GOLDBERG (LG: 9890)
Attorney for Plaintiff
3 Columbus Circle, 15th Floor
New York, N.Y. 10019
(646) 452-8380
lg@lgoldberglaw.com